# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

EDUARDO FERNANDEZ,

              Petitioner,

     v.

TIMOTHY E. BUSBY,

              Respondent.

CASE NO. CV 11-05057-GHK (SP)

**ORDER ACCEPTING IN PART AND REJECTING IN PART FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE, AND DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, records on file, and the Final Report and Recommendation of the United States Magistrate Judge (docket no. 24) ("R&R"). Further, the Court engaged in a de novo review of those portions of the R&R to which objections were filed. The Court accepts the findings and recommendations of the Magistrate Judge with respect to grounds three and four of the Petition, as set forth at pages 33 to 42 of the R&R, but rejects the findings and recommendations of the Magistrate Judge with respect to grounds one and two, for the reasons set forth below. The Court accepts the factual findings as set forth in the R&R at pages 4 to 13. For the reasons explained below, the Petition for Writ of Habeas Corpus is DENIED.

# DISCUSSION

In federal habeas proceedings, a petitioner is not entitled to relief on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim":

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal court may only consider evidence in the state court record when deciding whether a petitioner has satisfied § 2254(d). *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, 1400 n.7 (2011). The relevant state court decision for a habeas decision is the last reasoned state court decision – in this instance, the February 10, 2010, decision by the California Court of Appeal. *Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013), *amended on denial of reh'g*, 733 F.3d 794 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1001 (2014).

To be "contrary to" clearly established federal law under § 2254(d)(1), the state court decision must apply a rule that "contradicts the governing law" identified in a Supreme Court decision, or confront facts that are "materially indistinguishable" from a Supreme Court decision, and reach a different result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotations omitted). Alternatively, to be an "unreasonable application" of clearly established federal law under § 2254(d)(1):

> [i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

*Id.* at 75-76 (internal quotations and citations omitted).

"[A]s to the clause dealing with 'an unreasonable determination of the facts,'" section 2254(d)(2), "the statement of facts from the last reasoned state court decision is

1 afforded a presumption of correctness that may be rebutted only by clear and convincing

2 evidence." *Cudjo v. Ayers*, 698 F.3d 752, 762 (9th Cir. 2012) (internal quotation

3 omitted). Under § 2254(d)(2), "if a petitioner challenges the substance of the state

4 court's findings, . . . [the court] must be convinced that an appellate panel, applying the

5 normal standards of appellate review, could not reasonably conclude that the finding is

6 supported by the record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012)

7 (internal quotations omitted).

8      Finally, "[a] state court's determination that a claim lacks merit precludes federal

9 habeas relief so long as fairminded jurists could disagree on the correctness of the state

10 court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation

11 omitted). "Under § 2254(d), a habeas court must determine what arguments or theories

12 supported or . . . could have supported, the state court's decision"; the court must not

13 "overlook[] arguments that would otherwise justify the state court's result . . . ." *Id.*

14 Section 2254(d) provides "a difficult to meet" and "highly deferential standard for

15 evaluating state-court rulings, which demands that state-court decisions be given the

16 benefit of the doubt." *Pinholster*, 131 S. Ct. at 1398 (internal quotations omitted).

17 **I.**   **Petitioner's Fourth Amendment Claims Are Not Cognizable on Federal Habeas Review**

18

19      Petitioner asserts four grounds for relief in his Petition:

20 (1)   "Petitioner's Constitutional Rights to a fair trial, due process, the right to present a defense, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments and his Fourth Amendment right against unreasonable search and seizure were violated when the wiretap application were [sic] not turned over to the defense prior to trial."

21

22

23 (2)   "The trial court's summary denial of petitioner's motion to suppress the wiretaps was prejudicial and was not harmless."

24 (3)   "The trial court erred in refusing petitioner's request to give CALCRIM 3402 on petitioner's defense of acting under threats and menaces; the court's failure to properly instruct was a denial of petitioner's right under the Sixth and Fourteenth Amendments to the United States Constitution."

25

26

27 (4)   "The trial court prejudicially erred and violated petitioner's federal constitutional right to a fair trial when it improperly excluded, as heresay [sic], evidence of a threatening statement."

28

1  Pet. for Writ of Habeas Corpus 28 USC 2254 and Mem. of Ps. & As. in Supp. Thereof
2  (docket no. 1) ("Petition") at 3. As explained in the R&R, the Magistrate Judge found
3  that grounds three and four did not merit habeas relief, but that grounds one and two
4  entitled Petitioner to conditional habeas relief "directing the California Court of Appeal
5  to review the sealed affidavit [submitted in support of the wiretap applications] before
6  again conducting a harmless error analysis to determine whether petitioner is entitled to
7  relief." R&R at 3. This conclusion rested on the Magistrate Judge's determination that
8  these were essentially due process claims, which the California Court of Appeal had
9  "misapprehended" as Fourth Amendment violations. *Id.* However, though the Petitioner
10 attempts to characterize those claims as implicating his rights " to a fair trial, due
11 process, [and] to present a defense, as guaranteed by the Fifth, Sixth, Eighth and
12 Fourteenth Amendments," his claims unquestionably arise under the Fourth Amendment.

13        Petitioner's claims stem from the denial of two pre-trial motions, one to suppress
14 the wiretap recordings and all evidence obtained as a result of the wiretap,[1] and one to
15 "Disclose the Sealed Portions of Affidavit in Support of Applications for Order
16 Authorizing the Interception." Petition at 14. According to Petitioner, he argued that
17 "the wiretaps were obtained in violation of the Fourth Amendment and/or the
18 requirements of [California] Penal Code sections 629.52 et seq.," and that, "in order to
19 litigate that the necessity requirement for issuance of the wiretaps was satisfied and that
20 there was probable cause for issuance of the wiretaps, the applications in support of the
21 wiretaps had to be turned over to the defense in their entirety or the cause dismissed."
22 *Id.*

23        The Fourth Amendment, of course, provides that the "right of the people to be
24

---

25        [1]For purposes of this analysis, the Court has assumed that Petitioner's motion to
   suppress challenged not just the wiretap recordings, but all evidence obtained as a result
26 of what was learned from those recordings, including all evidence seized from
   Petitioner's home pursuant to the search warrant obtained in reliance on those recordings,
27 and statements made by the Petitioner after he was arrested, since he was arrested based
28 on what was found at his home.

1   secure in their persons, houses, papers, and effects, against unreasonable searches and

2   seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

3   supported by Oath or affirmation, and particularly describing the place to be searched,

4   and the persons or things to be seized." U.S. Const. amend. IV.  California Penal Code

5   section 629.52 provides that a judge may authorize the interception of wire or electronic

6   communications if the judge finds (1) "probable cause to believe that an individual is

7   committing, has committed, or is about to commit" certain listed crimes; (2) "probable

8   cause to believe that particular communications concerning the illegal activities will be

9   obtained through that interception"; (3) "probable cause to believe that the facilities from

10  which, or the place where, the wire or electronic communications are to be intercepted

11  are being used, or are about to be used, in connection with the commission of the

12  offense, or are leased to, listed in the name of, or commonly used by the person whose

13  communications are to be intercepted"; and (4) "[n]ormal investigative procedures have

14  been tried and have failed or reasonably appear either to be unlikely to succeed if tried or

15  to be too dangerous."  As noted, Petitioner challenged both whether there was probable

16  cause for issuance of the wiretaps and whether the "necessity" requirement had been

17  satisfied.  Petition at 14.

18      The remedy when evidence is obtained in violation of the Fourth Amendment is

19  exclusion of the illegally obtained evidence from trial.  This "exclusionary rule" is "a

20  judicially created means of effectuating the rights secured by the Fourth Amendment."

21  *Stone v. Powell*, 428 U.S. 465, 482 (1976).  The purpose of the rule is to safeguard

22  Fourth Amendment rights generally, through the deterrence of police conduct that might

23  violate those rights; it does not create a personal constitutional right, and was not

24  intended to redress any injury to the privacy of the person whose Fourth Amendment

25  rights may have been violated.  *Id.* at 486.  The United States Supreme Court has

26  therefore found that any additional deterrent effect that might result if state prisoners

27  were allowed to raise search-and-seizure claims in federal habeas corpus review of state

28  convictions would be minimal, and "would be outweighed by the acknowledged costs to

1 | other values vital to a rational system of criminal justice." *Id.* at 494.

2 |       Accordingly, "where the State has provided an opportunity for full and fair

3 | litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas

4 | corpus relief on the ground that the evidence obtained in an unconstitutional search or

5 | seizure was introduced at his trial." *Id.*  California provides criminal defendants with

6 | such a full and fair opportunity through the procedures of California Penal Code section

7 | 1538.5, which permits defendants to move to suppress evidence on the ground that it was

8 | obtained in violation of the Fourth Amendment. *Gordon v. Duran*, 895 F.2d 610, 613-14

9 | (9th Cir.1990); *see also Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir.1983); *Mack v.*

10 | *Cupp*, 564 F.2d 898, 901 (9th Cir.1977).

11 |       In determining whether a petitioner has had a full and fair opportunity to litigate a

12 | claim in state court, "[t]he relevant inquiry is whether petitioner had the opportunity to

13 | litigate his claim, not whether he did in fact do so or even whether the claim was

14 | correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.1996).  Courts

15 | also consider the extent to which the claim was briefed before and considered by the

16 | state appellate courts. *Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-79 (9th Cir.1990);

17 | *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir.1981).

18 |       Petitioner argues that he did not have a "full and fair opportunity to litigate" his

19 | Fourth Amendment claim in state court. Ps. & As. in Supp. of Traverse and Request for

20 | Evid. Hrg. (docket no. 19) ("Traverse") at 12.  He does not argue that he did not have

21 | any opportunity to litigate this claim, just that the opportunity was not "fair," because he

22 | was not provided with an unredacted copy of the affidavit supporting the wiretap

23 | application.  The cases do not require that the procedure available to Petitioner be

24 | perfect, however, or even that the correct outcome be reached. *Ortiz-Sandoval*, 81 F.3d

25 | at 899; *see Moormann v. Schriro*, 426 F.3d 1044, 1053 (2005) (upholding denial of

26 | petition despite Petitioner's claim that "he did not have a full and fair opportunity to

27 | litigate his warrant challenge because the state court's factual findings are not supported

28 | by the evidence"); *Gordon*, 895 F.2d at 613 (upholding denial of petition despite

1   Petitioner's claim that Fourth Amendment issue was not litigated in state court, noting
2   that, "[w]hether or not Gordon did in fact litigate this fourth amendment claim in state
3   court, he did have the opportunity to do so").

4          Petitioner's arguments go "not to the fullness and fairness of his opportunity to
5   litigate the claim, but to the correctness of the state court resolution, an issue which
6   *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir.
7   1994) ("Siripongs had a full suppression hearing at trial, and does not contend otherwise.
8   His contention that the state court on appeal did not understand his argument is
9   misleading; Siripongs made his argument and it was rejected."). Petitioner had the
10  opportunity (1) to present his arguments to the trial court, which held a hearing on his
11  motions to suppress and for disclosure of the wiretap affidavit, (2) to the Court of
12  Appeal, which addressed the issue in its written opinion, and (3) to the California
13  Supreme Court, in his Petition for Review. That the trial court erred in denying
14  Petitioner's motions without reviewing the unredacted wiretap affidavit in camera, and
15  that the Court of Appeal applied a "harmless error" standard in analyzing the claim, do
16  not exempt Petitioner from the reach of *Stone v. Powell*. In fact, one of the two
17  consolidated cases before the Supreme Court in *Stone* had similar procedural facts:  the
18  California trial court rejected the defendant's contention that testimony by the arresting
19  officer as to the fruits of a search incident to arrest should have been excluded (because
20  the arrest was illegal as conducted pursuant to an unconstitutional vagrancy ordinance);
21  and when the issue was presented to the Court of Appeal, that court "found it
22  unnecessary to pass upon the legality of the arrest and search because it concluded that
23  the error, if any, in admitting the testimony of the [arresting] officer was harmless
24  beyond a reasonable doubt under *Chapman v. California*." *Stone*, 428 U.S. at 470.  The
25  Ninth Circuit later found that the arrest and subsequent search were illegal, and granted
26  habeas relief. *Id.* at 471.  Despite the trial court's error, the Court of Appeal's failure to
27  address the issue on the merits, and the Court's apparent agreement that the search at
28  issue was pursuant to an illegal arrest, the *Stone* Court reversed the Ninth Circuit's

1  habeas grant, holding that "where the State has provided an opportunity for full and fair
2  litigation of a Fourth Amendment claim, the Constitution does not require that a state
3  prisoner be granted federal habeas corpus relief on the ground that evidence obtained in
4  an unconstitutional search or seizure was introduced at his trial." *Id.* at 482.

5      Accordingly, as Petitioner had a sufficiently "full and fair" opportunity to press his
6  arguments to multiple levels of the state court system, this Court cannot now entertain
7  his claim that evidence obtained pursuant to an unconstitutional wiretap was submitted at
8  his trial.  Even assuming the original wiretap that captured Petitioner's conversations
9  with the target of an ongoing DEA investigation was unconstitutional, and that all other
10  evidence introduced at Petitioner's trial should be considered "the fruit"of that
11  "poisonous tree," that is no basis for habeas relief.  *Id.* at 494; *Terrovana*, 912 F.2d at
12  1177-78 (holding that *Stone* barred federal habeas review of claim that "incriminating
13  statement" made incident to warrantless arrest in petitioner's home "must be suppressed
14  as fruit of this illegal seizure").

15      The evidence introduced against Petitioner appears to have been significant,
16  reliable, and probative of his guilt – exactly the type of evidence the *Stone* Court
17  recognized was often excluded by operation of the exclusionary rule at trial. *Stone*, 428
18  U.S. at 490 (noting that "the physical evidence sought to be excluded is typically reliable
19  and often the most probative information bearing on the guilt or innocence of the
20  defendant").  "Application of the rule thus deflects the truthfinding process and often
21  frees the guilty.  The disparity in particular cases between the error committed by the
22  police officer and the windfall afforded a guilty defendant by application of the rule is
23  contrary to the idea of proportionality that is essential to the concept of justice." *Id.*  The
24  costs attendant on application of the exclusionary rule may well be outweighed in the
25  aggregate by the deterrent effect of applying the rule at trial or on direct review, but the
26  Supreme Court has determined that the balance is different "when a criminal conviction
27  is sought to be overturned on collateral review on the ground that a search-and-seizure
28  claim was erroneously rejected by two or more tiers of state courts." *Id.* at 491.  "[I]n the

1  case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted

2  defendant is usually asking society to redetermine an issue that has no bearing on the

3  basic justice of his incarceration." *Id.* at 491 n.31.

4  **II.   <u>Petitioner Presents No Other Basis Meriting Habeas Relief</u>**

5        Petitioner's attempt to re-characterize his claims as arising under other

6  constitutional amendments and implicating other constitutional rights, including his

7  rights to a "fair trial, due process, [and] to present a defense, as guaranteed by the Fifth,

8  Sixth, Eighth and Fourteenth Amendments," does not transform the nature of his claims.

9  He claims that evidence obtained as the result of a unconstitutional wiretap should not

10  have been admitted at his trial; "the Fourth Amendment (and the exclusionary rule)

11  provide the only basis upon which habeas relief could conceivably be granted." *Abell*,

12  640 F.2d at 1088 (rejecting claims that habeas relief should be granted because material

13  seized was protected by the First Amendment). If relief for the admission of

14  unconstitutionally obtained evidence cannot be granted based on the Fourth Amendment,

15  simply arguing that the admission of that evidence also constituted violations of

16  Petitioner's rights to due process, or to a fair trial, cannot expand the type of relief

17  available. Even though other constitutional rights may be "at stake, [Petitioner's]

18  allegation that evidence admitted against him should have been suppressed is a Fourth

19  Amendment claim." *Id.* at 1087.

20        Petitioner also argues that apart from the question of whether evidence obtained as

21  a result of the wiretaps should have been suppressed, the failure to disclose the

22  unredacted affidavit submitted in support of the wiretap applications is a separate

23  violation of his constitutional rights, including his rights "to a fair trial, due process,

24  [and] to present a defense, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth

25  Amendments." Petition at 13-14. Petitioner asserts, however, that he sought the wiretap

26  affidavits not to discover the identity of any confidential informants, but to support his

27  argument that the wiretaps had been approved without proper showings of either

28  probable cause or necessity, and that evidence obtained from, or as a result of

1  information learned from, the wiretaps should therefore be suppressed. *Id.* at 14-17.

2  Thus, his argument that the wiretap affidavits should have been disclosed is inextricably

3  linked to his Fourth Amendment claims.  In theory, if Petitioner had obtained the

4  affidavits he might have prevailed in showing that the wiretaps were not constitutional.

5  However, even if this Court now assumes that the wiretaps were in fact unconstitutional,

6  there is no remedy available to Petitioner here to address the admission of evidence

7  obtained from those wiretaps at his trial, for the reasons discussed above.

8          Petitioner also appears to argue that the failure to disclose the affidavits may have

9  constituted a failure by the State to disclose "evidence which may exculpate or exonerate

10  the accused," in violation of the *Brady v. Maryland*, 373 U.S. 83 (1963), line of cases.

11  Petition at 17.  However, there is nothing in the record to suggest that anything in the

12  wiretap affidavits would have constituted exculpatory evidence subject to *Brady*.  To

13  "make out a *Brady* violation, the evidence must be material, which means there must be a

14  reasonable probability that, had the evidence been disclosed to the defense, the result of

15  the proceeding would have been different.  A 'reasonable probability' is a probability

16  sufficient to undermine confidence in the outcome." *Morris v. Ylst*, 447 F.3d 735, 741

17  (9th Cir. 2006) (internal quotations omitted).  Petitioner has made no showing that such a

18  reasonable probability exists.  Nor is it likely that anything in the wiretap affidavit could

19  have constituted "evidence which may exculpate or exonerate" Petitioner.  The affidavit

20  was submitted to the court in order to obtain the wiretaps in the first place, and thus the

21  affidavit necessarily predated the wiretaps.  Petitioner was not the target of the

22  investigation, and only became known to the investigating agents because one of the

23  wiretaps captured conversations indicating that the primary target of the investigation

24  was storing drugs at Petitioner's home.  It seems highly unlikely that anything in the

25  affidavit drafted before the investigating agents had ever heard of Petitioner could

26  constitute exculpatory evidence regarding Petitioner.  Nor does it seem likely that such

27  evidence, if it did exist, would be sufficient to outweigh the significant evidence

28  supporting Petitioner's conviction that was introduced at trial.  "The mere possibility that

1 | an item of undisclosed information might have helped the defense, or might have
2 | affected the outcome of the trial, does not establish 'materiality' in the constitutional
3 | sense." *U.S. v. Agurs*, 427 U.S. 97, 109-10 (1976). "Petitioner must show how the
4 | information or evidence would be both material and favorable to his defense." *Cooper v.*
5 | *Brown*, 510 F.3d 870, 925 (9th Cir. 2007). Not only has Petitioner made no such
6 | showing, he has not even offered any hypothesis as to what could be in the wiretap
7 | affidavits that might be material to anything other than the question of whether the
8 | wiretaps were constitutional.

9 |      Of course, it is true that Petitioner's complaint is precisely that the affidavits are
10 | *not* in the record, thus preventing him from identifying what or where in those affidavits
11 | exculpatory evidence might be found. But the rule cannot be that the Respondent has the
12 | burden to prove the *absence* of undisclosed *Brady* material. Without the affidavits in the
13 | record, this Court cannot hold that theoretical evidence that might hypothetically exist
14 | constitutes a *Brady* violation. Under *Pinholster*, this Court must accept the record as it
15 | was created in the state court proceedings. 131 S. Ct. at 1398. Petitioner, as the
16 | appellant in the Court of Appeal, had the responsibility to provide a record adequate to
17 | review his claims. *People v. Whalen*, 56 Cal. 4th 1, 85 (Cal. 2013). He could have
18 | moved to augment the record as necessary. Cal. R. Ct. 8.155(a). On the record as
19 | presented to the Court of Appeal, this Court cannot now say that the Court of Appeal
20 | made an "unreasonable determination of the facts" in failing to *sua sponte* request a copy
21 | of the affidavits. Nor can this Court "remand" the case to the California Court of Appeal
22 | for additional fact finding as a means of circumventing the *Pinholster* rule. The United
23 | States District Court does not sit in direct review of the California Court of Appeal.

24 |      In short, this Court cannot say that the state courts' adjudication of Petitioner's
25 | claims "resulted in a decision that was contrary to, or involved an unreasonable
26 | application of, clearly established Federal law, as determined by the Supreme Court of
27 | the United States; or . . . resulted in a decision that was based on an unreasonable
28 | determination of the facts in light of the evidence presented in the State court

1  proceeding." 28 U.S.C. § 2254(d).  Accordingly, the Petition for Writ of Habeas Corpus
2  is hereby DENIED.

3      In light of the discussion set forth above, the Court hereby GRANTS a Certificate
4  of Appealability with respect to grounds one and two of the Petition, but DENIES a
5  Certificate of Appealability with respect to grounds three and four of the Petition.

6

7      **IT IS SO ORDERED**.

8

9      DATED:  March 27, 2014

10

11                                      GEORGE H. KING
                                        Chief United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28